**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THEOPHILUS and STEPHANIE AFOGHO, as parents and next friends of A.A., a minor, TODD PORTER, individually and as parent and next friend of C.P., a minor, MARCUS GREGORY, and CHRISTOPHER BOYKIN, | |
| **Plaintiffs,** | |
| v. | Case No. 18-cv-0098-NJR-MAB |
| ILLINOIS CENTRAL SCHOOL DISTRICT 104 BOARD OF EDUCATION, ANDREA HEURING, EMILY WEBER, DEREK MORGAN, individually and as co-president of the Illinois Central Federation of Teachers and Support Staff Local Union 4673, and SARAH SVOBODA, | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant Illinois Central School District 104 Board of Education ("the Board") and Defendant Sarah Svoboda ("Svoboda") (Doc. 73) and a Motion to Dismiss Count 10 filed by Defendant Derek Morgan ("Morgan") (Doc. 74). For the reasons set forth below, the Court denies the Motion to Dismiss filed by the Board and Svoboda (Doc. 73) and grants in part and denies in part the Motion to Dismiss Count 10 filed by Morgan (Doc. 74).

## FACTUAL BACKGROUND

This is an action alleging unlawful racial discrimination and retaliation by the board of education of an Illinois public school district, as well as by the district's board president and certain of its teachers (Doc. 68, p. 1). Illinois Central School District 104 is located in O'Fallon, Illinois, and consists of two schools: Central Elementary School ("CES") and Joseph Arthur Middle School ("JAMS"). The minor plaintiffs are two mixed-race students[1] who attended JAMS and were members of the Student Council.

On January 18, 2017, the JAMS Student Council conducted a meeting (Doc. 68, ¶ 20). Among the students and teachers at the meeting were the minor plaintiffs, A.A. and C.P., and defendant Andrea Heuring ("Heuring"), a teacher and Student Council Advisor (*Id.* at ¶ 21-24). At the meeting, Heuring referred to A.A. and C.P. as her "slaves" in front of other students and forced them to perform personal tasks for her (*Id.* at p. 68). Specifically, "Heuring referred to C.P. as her '*slave*' and '*Slave Number Four*,' and further directed C.P. to get her jacket . . . When a Caucasian student asked Heuring if he could also be her slave, she told him no, but stated that A.A. was also her '*slave*' and referred to A.A. as '*Slave Number One because she's been with me the longest.*' When C.P. returned to the room with Heuring's jacket, Heuring again referred to C.P. as '*Slave Number Four.*'" (*Id.* at ¶ 21-24 (emphasis in original)). The Second Amended Complaint refers to this as the "January 18, 2017 Slave Incident." (*Id.* at ¶ 34).

On January 19, 2017, C.P.'s mother, Krista Porter, and A.A.'s mother, Stephanie Afogho, reported the statements made by Heuring to the Superintendent, John Bute.

---

[1] Because it is relevant to the motions, both A.A. and C.P. have African American fathers and Caucasian mothers (*Id.* at ¶ 1-4).

From thereon, C.P.'s parents, Krista and Todd Porter, and A.A.'s parents, Stephanie and Theophilus Afogho, repeatedly reported and complained to the Board and Defendant Svoboda, the President of the Board, about the racial discrimination (*Id.* at ¶ 29). The Second Amended Complaint alleges that, as a result of the efforts by Plaintiffs to report and oppose the racial discrimination, Defendants undertook actions to intimidate and retaliate against C.P., A.A., their parents, and others who associated with them (*Id.* at ¶ 30).

C.P.'s father, Todd Porter, was the coach of the JAMS boys' basketball team (*Id.* at ¶ 32). Plaintiffs allege that, after the January 18, 2017 Slave Incident, several African American JAMS students began to appear on the "F List," which disallowed them from participating on the basketball team (*Id.* at ¶ 34). On February 8, 2017, the Board held an emergency meeting where Plaintiff Marcus Gregory, an African American JAMS assistant basketball coach, questioned why so many African American students were being placed on the "F List" (*Id.* at ¶ 42). At a regular school board meeting held on February 13, 2017, Stephanie Afogho, Krista Porter, and Gregory voiced their concerns and complaints about the January 18, 2017 Slave Incident (*Id.* at ¶ 45-46). At this meeting, another African American JAMS assistant basketball coach, Plaintiff Christopher Boykin, sat with a group of parents of African American and mixed-race children who showed their support for C.P., A.A., and their parents (*Id.* at ¶ 47).

On February 16, 2017 the Board held another special school board meeting. The Second Amended Complaint alleges that Defendant Heuring contacted a high school student via Facebook to "rally" students on her behalf (*Id.* at ¶ 49-56). The high school

students were permitted to speak by the Board and Defendant Svoboda in opposition to, and in retaliation of, Plaintiffs' complaints of racial discrimination (*Id.* at ¶ 59). After speaking before the Board, the group of high school students met in a classroom for pizza provided by Heuring, Defendant Emily Weber (a teacher for Illinois Central School District 104), and Defendant Derek Morgan (a teacher for Illinois Central School District 104) (*Id.* at ¶ 60).

Defendants Heuring, Weber, and Svoboda were members of the Illinois Central Federation of Teachers and Support Staff Local Union 4673, and Morgan was the co-president of that union (*Id.* at ¶ 64 and 65). At the encouragement of one or more of the defendants, a group of teachers, including Heuring, Weber, and Morgan, appeared at the February 13 and February 16 board meetings wearing matching teacher union shirts and sitting in the front rows (*Id.* at ¶ 66-67, 71). The Second Amended Complaint alleges that Defendants did this in order to intimidate Plaintiffs (*Id.* at ¶ 71). Defendants Svoboda and the Board allegedly permitted the actions of Defendants Heuring, Weber, and/or Morgan to intimidate and retaliate against Plaintiffs (*Id.*).

C.P.'s father, Todd Porter, took the JAMS varsity basketball team to the Illinois State Tournament for the first time in the school's history (*Id.* at ¶ 100). Todd Porter was selected as "Co-Coach of the Year" by the Illinois Basketball Coaches Association, the first time a JAMS coach had been nominated for the award (*Id.* at ¶ 100-104). The Second Amended Complaint alleges that, despite these unprecedented achievements, on May 8, 2017, the Board held a meeting where it approved the non-renewal of Todd Porter's contract for the following year (*Id.*). The Board also approved the non-renewal of

Gregory's and Boykin's (both assistant basketball coaches) contracts (*Id.*). On May 11, 2017, Svoboda signed letters addressed to Porter, Gregory, and Boykin terminating their services effective May 22, 2017 (*Id.* at ¶ 105). The letters invited the coaches to reapply for any positions available the following school year (*Id.*). After reapplying for their respective coaching positions, Porter, Gregory, and Boykin were never interviewed (*Id.* at ¶ 107). As a result of the failure to rehire Porter, Gregory, and Boykin, one member of the Board during the 2016-17 school year, Chris Monroe, resigned by saying:

> "[W]hen do we no longer hire the best candidate for an open position? Last spring we terminated a coach that led our kids to the State Tournament Final Four and was Coach of the Year [Todd]. My belief is that we hire the best person regardless of age, gender, race or nationality. . . . I have lost confidence that this Board can make an unbiased decision."

(*Id.* at ¶ 109). The Board decided to re-hire coach Bill Brunner, a Caucasian male who had not voiced any opposition to racial discrimination and retaliation at the board meetings (*Id.* at ¶ 110).

On January 16, 2018, Plaintiffs filed this case in federal court (Doc. 1). On October 3, 2018, Plaintiffs filed a Second Amended Complaint alleging the following 28 counts (Doc. 68):

1. A.A. and C.P. against the Board -- Violation of Title VI (Discrimination)
2. A.A. and C.P. against the Board -- Violation of Title VI (Retaliation)
3. A.A. and C.P. against the Board -- Violation of the Illinois Civil Rights Act of 2003 (Discrimination)
4. A.A. and C.P. against the Board -- Violation of the Illinois Civil Rights Act of 2003 (Retaliation)
5. A.A. and C.P. against the Board -- 42 U.S.C. § 1983 (Discrimination)
6. A.A. and C.P. against the Board -- 42 U.S.C. § 1983 (Retaliation)
7. A.A. and C.P. against Heuring -- 42 U.S.C. § 1983 (Discrimination)

8. A.A. and C.P. against Heuring -- 42 U.S.C. § 1983 (Retaliation)

9. A.A. and C.P. against Weber -- 42 U.S.C. § 1983 (Retaliation)

10. A.A. and C.P. against Morgan -- 42 U.S.C. § 1983 (Retaliation)

11. Todd Porter, Marcus Gregory and Christopher Boykin against the Board -- Violation of Title VI (Discrimination)

12. Todd Porter, Marcus Gregory and Christopher Boykin against the Board -- Violation of Title VI (Retaliation)

13. Todd Porter, Marcus Gregory and Christopher Boykin against the Board -- Violation of 42 U.S.C. § 1983 (Discrimination)

14. Todd Porter, Marcus Gregory and Christopher Boykin against the Board -- Violation of 42 U.S.C. § 1983 (Retaliation)

15. Todd Porter, Marcus Gregory, and Christopher Boykin against the Board -- Violation of the Illinois Civil Rights Act of 2003 (Discrimination)

16. Todd Porter, Marcus Gregory, and Christopher Boykin against the Board -- Violation of the Illinois Civil Rights Act of 2003 (Retaliation)

17. Todd Porter, Marcus Gregory and Christopher Boykin against the Board -- Violation of Whistleblower Act

18. Todd Porter, Marcus Gregory and Christopher Boykin against Svoboda -- Violation of 42 U.S.C. § 1983 (Discrimination)

19. Todd Porter, Marcus Gregory, and Christopher Boykin against Svoboda -- Violation of 42 U.S.C. § 1983 (Retaliation)

20. A.A. and C.P. against Heuring -- Violation of Illinois Human Rights Act (Discrimination)

21. A.A. and C.P. against Heuring -- Violation of Illinois Human Rights Act (Retaliation)

22. A.A. and C.P. against Weber -- Violation of Illinois Human Rights Act (Retaliation)

23. A.A. and C.P. against the Board -- Violation of Illinois Human Rights Act (Discrimination)

24. A.A. and C.P. against the Board -- Violation of Illinois Human Rights Act (Retaliation)

25. Todd Porter against the Board -- Violation of Illinois Human Rights Act (Discrimination)

26. Todd Porter, Gregory, and Boykin against the Board and Svoboda -- Violation of Illinois Human Rights Act (Retaliation)

27. Todd Porter against the Board -- Violation of Title VII (Discrimination)

28. Todd Porter, Gregory, and Boykin against the Board -- Violation of Title VII (Retaliation)

On October 25, 2018, the Board and Svoboda filed a motion to dismiss seeking to dismiss Counts 1, 2, 3, 4, 5, 6, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, and 28 of Plaintiffs' Second Amended Complaint (Docs. 72 and 73). On October 29, 2018, Morgan filed a motion to dismiss seeking to dismiss Count 10 of Plaintiffs' Second Amended Complaint (Doc. 74). On November 6, 2018, Plaintiffs filed responses in opposition to both motions (Doc. 75 and 76). No reply briefs were filed.

## Legal Standards

Defendants bring their motions pursuant to Federal Rules of Civil Procedure 9(a), 10(b), 12(b)(1), 12(b)(6), and 12(e).

Federal Rule of Civil Procedure 9(a) says: "Except when required to show that the court has jurisdiction, a pleading need not allege: a party's capacity to sue or be sued . . ." FED. R. CIV. P. 9(a).

Federal Rule of Civil Procedure 10(b) states: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." FED. R. CIV. P. 10(b). "The primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792,

797 (7th Cir. 2011). When trying to determine whether to dismiss a complaint pursuant to Rule 10(b), "the issue is notice; where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Id.* at 798.

To survive a motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "clearly allege facts demonstrating each element" required to establish he has standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. The burden of establishing these three elements falls on the party invoking the court's jurisdiction. *Id.* Notably, "[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007) (internal citations omitted); *see also*

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." These motions are appropriate when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself. *Seung-Whan Choi v. Bd. of Tr. of Univ. of Illinois*, No. No. 16 C 11627, 2017 WL 3278823, at *6 (N.D. Ill. Aug. 2, 2017). "Rule 12(e) is designed to strike at unintelligibility rather than want of detail." *Id*. (internal citations omitted).

I.     **Counts 11 and 12**

Count 11 alleges a violation of Title VI (Discrimination) brought by Todd Porter, Marcus Gregory, and Christopher Boykin against the Board. Count 12 alleges a violation of Title VI (Retaliation) also brought by Porter, Gregory, and Boykin against the Board. The Board and Svoboda urge the Court to dismiss Counts 11 and 12 for failure to state a claim, arguing that Title VII is the appropriate source of relief for employment discrimination, not Title VI.

Title VI prohibits unlawful discrimination in all federally-assisted programs. 42 U.S.C. § 20000d. Specifically, Title VI of the Civil Right Act states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Congress intended for Title VII to be the actionable statute for employment discrimination, and not Title VI: "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3 (1964); *see Johnson v. Transp. Agency*, 480 U.S. 616, 628 n.6 (1987) ("The sponsor of this section, Senator Cooper, stated that it was designed to clarify that 'it was not intended that [T]itle VI would impinge on [T]itle VII.' 110 Cong.Rec. 11615 (1964)").

The Seventh Circuit has interpreted these statutes to mean "Title VI does not

provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, *or* (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern v. Bd. of Educ. of City of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998) (emphasis added).

The Board and Svoboda move to dismiss on the basis that "Plaintiffs' assertion that *one* of the purposes of Illinois Central School District 104's federal funding is to create and maintain jobs within the district is insufficient to state a cause of action," because it does not allege that the creation and maintaining of its jobs is a primary objective of the federal assistance (Doc. 73, p. 4). The Second Amended Complaint states: "Illinois Central School District 104 and the Board receive federal financial assistance *for the purpose* of creating jobs and maintaining existing jobs within the school system." (Doc. 68 at ¶ 216, 227) (emphasis added).

The Court agrees that this allegation does not establish that the *primary* purpose of the federal funds was to provide employment. Nonetheless, Plaintiffs have alleged that the discrimination in employment has necessarily caused discrimination against the primary beneficiaries of the federal aid.

The Board and Svoboda argue that Plaintiffs have not alleged that the primary beneficiaries of the federal aid, the students of Illinois Central School District 104, were subjected to discrimination because there are no allegations that the students were denied participation or the opportunity to participate in basketball. In response, Plaintiffs point to case law that says discrimination against teachers or supervisors affects students, and

therefore is within the purview of Title VI (Doc. 75, p. 7). *See Caulfield v. Bd. of Ed. of City of New York*, 486 F.Supp. 862, 882 (E.D.N.Y. 1979) ("[d]iscrimination by race in the hiring and assignment of teachers or supervisors, as a matter of law and of fact, constitutes discrimination against students [the primary beneficiaries of the financial aid]."); *United States v. Jefferson Cty. Bd. of Educ.*, 372 F.3d 836, 883 (5th Cir. 1966) ("faculty integration is essential to student desegregation"); *Ahern v. Bd. of Educ.*, 133 F.3d 975, 983-84 (7th Cir. 1998) (applying infection theory to public school plan for assignment of principals). Defendants cite to no case law to argue otherwise.

The Second Amended Complaint alleges that "[t]he Board's employment discrimination described herein tends to infect its students' entitlement to Illinois Central School District 104's services, programs, and activities." (Doc. 68, at ¶ 217, 228). At this stage of the proceedings, and after considering the cases cited by Plaintiffs, the Court finds the allegations are sufficient to show the denial of meaningful, nondiscriminatory participation in school activities for JAMS students as a result of the discriminatory and retaliatory conduct directed toward Todd Porter, Marcus Gregory, and Christopher Boykos.[2] Thus, Plaintiffs have alleged that the Board's actions have necessarily caused discrimination against the students, the primary beneficiaries of federal aid.

The Board and Svoboda also argue that Plaintiffs' Second Amended Complaint fails to state a plausible claim for retaliation in Count 12 because the allegations do not

---

[2] The Court notes that the Seventh Circuit has not formally recognized a retaliation claim under Title VI, but other courts have recognized such a claim. *See El-Akrich v. Board of Trustees of University of Illinois*, Case No. 3:17-CV-3041, 2018 WL 1075029, at *13 (C.D. Ill. Feb. 27, 2018); *see also Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874, 889-90 (N.D. Ill. 205) (collecting cases); *see also Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003). Without opposing argument from Defendants on this issue (in fact, Defendants agree on this point), the Court finds it appropriate to do the same.

satisfy the "but-for" causation standard. Plaintiffs respond that they have alleged facts showing that "but for" the discrimination, they would not have been terminated.

The Northern District of Illinois, based on Seventh Circuit precedent, concluded "[that] 'but-for' causation is the appropriate standard for Title VI anti-retaliation claims." *Lance v. Betty Shabazz Int. Charter Sch.*, No. 12 CV 4116, 2014 WL 340092, at *8 (N.D. Ill. 2014). A plaintiff can show "but-for" causation by "present[ing] evidence that he met the employer's legitimate expectations, that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, and that any nondiscriminatory reasons offered by the employer for the adverse action are pretextual." *Sawyer v. Columbia Coll.*, 864 F.Supp.2d 709, 722-23 (N.D. Ill. 2012) (citing *O'Neal v. City of Chi.*, 588 F.3d 406, 410 (7th Cir. 2009); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006); *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). The Court should look to "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (doing away with the "direct" and "indirect" methods of proving causation, as well as the use of "convincing mosaics" to prove causation, but declining to overrule the *McDonnell Douglas* burden-shifting method).

Plaintiffs Porter, Gregory, and Boykin participated in statutorily protected activity when they "voiced concerns regarding the January 18, 2017 Slave Incident to Illinois Central School District 104 and the Board." (Doc. 68, ¶ 230). Plaintiffs have alleged that

Porter, Gregory, and Boykin "were the only African American coaches employed by the school at the time of their termination, and the only coaches who voiced complaints regarding the discriminatory treatment of A.A. and C.P. and the retaliation they and those with whom they associated experienced." (Doc. 68, ¶235). Plaintiffs further allege that Todd Porter took the JAMS varsity basketball team to the Illinois State Tournament for the first time in the school's history, the team placed fourth overall (the highest ranking it had ever received), and Todd Porter was previously selected as Co-Coach of the Year by the Illinois Basketball Coaches Association, which is the first time a JAMS coach had been nominated for the award (Doc. 68, ¶ 100-103). Gregory and Boykin were also assistant coaches for the boys basketball team (Doc. 68, p. 2). Plaintiffs also allege that a similarly situated employee, Bill Brunner, was rehired as a coach, and he "had not voiced any opposition to racial discrimination and retaliation at the Defendant's board meetings." (Doc. 68, ¶ 110). Plaintiffs also allege that the reason the Board gave for the termination was pretextual (Doc. 68, ¶ 237).

The Board and Svoboda argue the amount of time between the protected activities and acts of retaliation, three months, is too long for there to be "but-for" retaliation. But, as set forth above, Plaintiffs allegations do not rely on temporal proximity alone. *See Lance v. Betty Shabazz Int'l Charter Sch.*, No. 12 CV 4116, 2014 WL 340092, at *9 (N.D. Ill. Jan. 29, 2014) (citing *Hughes v. Derwinski*, 967 F.2d 1168, 1174-5 (7th Cir. 1992) ("The Seventh Circuit has found a four-month period to be insufficient to establish a causal connection by temporal proximity alone."). Treating the facts alleged as true, Plaintiffs have sufficiently established "but-for" causation. Thus, dismissal of Count 12 is not

appropriate.

## II. Count 14

The Board and Svoboda also move to dismiss Count 14 of the Second Amended Complaint for failure to state a claim. Count 14 alleges a Section 1983 violation against the Board for retaliating against Porter, Gregory, and Boykin for exercising their right to free speech.

To determine whether a government employee's speech is constitutionally protected the courts use a two-part test: (1) whether the employee spoke as a citizen on a matter of public concern; and (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Lane v. Franks*, 573 U.S. 228, 228 (2014). Because the Board and Svoboda do not raise any issue with the second prong of this test, the question is whether Porter, Gregory, and Boykin spoke as citizens on a matter of public concern.

The Board and Svoboda concede that Porter, Gregory, and Boykin "spoke as private citizens," but argue that the "Plaintiffs who spoke did so to advance purely private interests." (Doc. 73, p. 8). Defendants specifically contend: (1) Porter's complaints at the board meetings were limited to the treatment of his son, (2) Gregory only complained at the board meetings because it included students on the team he coached, and (3) Boykin never spoke at all (*Id.* at 8-9).

The Second Amended Complaint alleges as follows: "At the February 13, 2017 meeting, [Todd Porter stood next to Krista] as Stephanie and Krista voiced their concerns and complaints about the January 18, 2017 Slave Incident and asked why no action had

been taken regarding the incident." (Doc. 68, ¶ 45). "Gregory also spoke at the February 13, 2017 meeting, stating that under no circumstances should a student be addressed as a slave . . . ." (*Id.* at ¶ 46). "Boykin was present at the February 13, 2017 meeting, and sat with a group of parents of African American and mixed-race children who showed their support for C.P., A.A., and their parents." (*Id.* at ¶ 47).

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement . . . ." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Even though Porter, Gregory, and Boykin may have had personal concerns when they exercised their free speech at the February 13, 2017 meeting, the Seventh Circuit has held speech that may appear to concern merely private matters could be public concerns if the form and context suggest the plaintiff was making the statements to inform the public. *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989). Taking the factual allegations as true, and construing them in the light most favorable to Plaintiffs, it is plausible the speech was to raise awareness to the Board and the public that racism was a serious problem in the school district.[3]

Further, even though Boykin never verbally spoke, his actions as alleged in the Second Amended Complaint could still constitute "speech." *See Texas v. Johnson*, 491 U.S. 397, 403 (1989) ("The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word."). It is alleged that Boykin sat with a group of people supporting A.A. and C.P.

---

[3] Defendants also argue that claims for retaliation by Porter, Gregory, and Boykin under Section 1983 are not cognizable as they pertain to their own Equal Protection rights. Plaintiffs concede this and assert that they have not asserted a constitutional right to equal protection as a basis for their Section 1983 claim within Count 14 (Doc. 75, p. 12). Accordingly, this argument is moot.

who opposed the discrimination. It is plausible Boykin intended to send a message by sitting with that group of people. Furthermore, it is likely people would understand that message. Therefore, construing the allegations of the Second Amended Complaint in the light most favorable to Boykin, his actions could be considered "speech" and dismissal on this ground is not appropriate.

For these reasons, the Court denies the request to dismiss Count 14.

### III. Counts 18, 19, and 26

The Board and Svoboda argue that the counts alleging Section 1983 and Illinois Human Rights Acts violations against Svoboda should be dismissed pursuant to Federal Rule of Civil Procedure 9(a) because the Second Amended Complaint fails to state whether plaintiffs are suing Svoboda in her official or individual capacity. Plaintiffs respond that controlling case law does not require them to specify whether they are suing a defendant in her individual or official capacity. Additionally, Plaintiffs argue that it is clear from the Second Amended Complaint that Plaintiffs' "obvious intentions" were to hold Svoboda *personally* liable. Lastly, Plaintiffs point out that they have made clear their intention to sue Svoboda in her individual or personal capacity, first in their Memorandum in Opposition to Defendants' Motion to Dismiss Complaint (Doc. 46), and in their current Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint (Doc. 75).

Federal Rule of Civil Procedure 9(a)(1) says: "Except when required to show that the court has jurisdiction, a pleading need not allege: a party's capacity to sue or be sued . . ." While Defendants are correct, the Seventh Circuit presumes "a section 1983

claim against a public official is an official-capacity suit," *Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988) (citing *Kolar v. Cty. of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985)), this presumption is not conclusive. *Id.* To determine whether a complaint is a claim brought against someone in his or her official or individual capacities, "a court must look to the manner in which the parties have treated this suit." *Shockley v. Jones*, 823 F.2d 1068, 1071 (7th Cir. 1987).

Plaintiffs sue the Board in Counts 13 and 14 for the same Section 1983 violations asserted against Svoboda in Counts 18 and 19. It would be redundant to sue Svoboda in her official capacity as the President of the Board, because "[a]n official-capacity suit is really just another way of suing the government." *Conner*, 847 F.2d at 394. Moreover, Defendants have not cited any binding authority suggesting a complaint that fails to specifically state a party's capacity when being sued calls for dismissal. Thus, the Court denies the motion to dismiss as to Counts 18, 19, and 26.

## IV. Request to Dismiss Various Counts Pursuant to Federal Rule of Civil Procedure 10(b)

The Board and Svoboda argue that Counts 1, 2, 3, 4, 5, 6, 7, 8, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, and 28 should be dismissed pursuant to Federal Rule of Civil Procedure 10(b). Specifically, Defendants move to dismiss Counts 1, 2, 3, 4, 5, 6, 23, and 24 because these counts combine the claims of A.A. and C.P. Defendants also move to dismiss Counts 11, 12, 13, 14, 15, 16, 17, 18, 19, 25, 26, 27, and 28 because these counts combine the claims of Todd Porter, Marcus Gregory, and Christopher Boykin.

"Noncompliance [with Rule 10(b)] is rarely a basis for dismissing a complaint unless the complaint is not understandable and does not provide defendants with fair

notice of the claims asserted against a defendant." *Federal Deposit Insurance Corp. v. Hillgamyer*, Case No. 11-cv-7502, 2013 WL 6234626, at *3 (N.D. Ill. Dec. 2, 2013).

The Court finds that Counts 1, 2, 3, 4, 5, 6, 23, and 24, brought by both A.A. and C.P., are sufficiently clear to put Defendants on notice of the causes of action they are facing from each plaintiff. The Second Amended Complaint explains in each individual count the alleged facts of retaliation or discrimination being complained about and the grounds for relief. Even though the Second Amended Complaint could have been structured in a way where each count was separate for A.A. and C.P., individually, this was not necessary because the claims incorporate the same transaction or occurrences. Thus, the Court will not dismiss Counts 1, 2, 3, 4, 5, 6, 23, and 24 on these grounds.

The Court also finds that Counts 11, 12, 13, 14, 15, 17, 18, 19, 25, and 28, which combine the claims of Todd Porter, Marcus Gregory, and Christopher Boykin are sufficiently clear to put Defendants on notice of the causes of action they are facing from each Plaintiff. Each count clearly states the individual facts upon which Plaintiffs feel Porter, Gregory, and Boykin were retaliated against, and it is sufficiently clear what legal theory each plaintiff is asserting. Thus, the Court will not dismiss Counts 11, 12, 13, 14, 15, 17, 18, 19, 25, 27, and 28 on these grounds.[4]

## V. Defendant Morgan's Motion to Dismiss Count 10

Defendant Morgan filed a Motion to Dismiss Count 10 pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 74). Count 10 alleges that Morgan retaliated against C.P. and A.A. for exercising their right to freedom of speech.

---

[4] In fact, Count 27 brings a claim on behalf of Todd Porter only (Doc. 68, p. 92).

Morgan argues that the Second Amended Complaint does not characterize him as a state actor acting under color of law, which is a requirement to bring a Section 1983 claim. But Count 10 specifically alleges that "Morgan, in his individual capacity and in his capacity as co-president of the Illinois Central Federation of Teachers and Support Staff Local Union 4673, acted under color of state law." (Doc. 68, ¶210).

Morgan also argues that Plaintiffs have failed to properly allege a constitutional deprivation against him in relation to their retaliation claim. Plaintiffs A.A. and C.P. allege, however, that Morgan retaliated against them for exercising their constitutional right to freedom of speech. Thus, the Court will not dismiss Count 10 on this ground.

Morgan also argues that Count 10 fails to indicate whether he is being sued in his official capacity as co-president of the Union, in his official capacity as a teacher for the District, or as an individual citizen. Count 10 alleges that Morgan retaliated against Plaintiffs "individually *and* as co-president of the Illinois Central Federation of Teachers and Support Staff Local Union 4673[.]" (Doc. 68, ¶ 207) (emphasis added). Because the Second Amended Complaint is clear in what capacities Morgan is being sued, the Court will not dismiss Count 10 on this ground.

Finally, Morgan vaguely argues that he cannot be held liable because suits against a state actor may not be brought pursuant to Section 1983 under a theory of *respondeat superior*. But Morgan's individual liability does not stem from any *respondeat superior* theory. The Second Amended Complaint alleges that Morgan was personally involved in retaliating against A.A. and C.P. for exercising their right to freedom of speech.

To the extent that Morgan is arguing that the union cannot be held liable for his

actions under *respondeat superior*, that is correct. Plaintiffs make no mention of any union policy or custom that was the moving force of the alleged constitutional deprivation. The union is a corporation against which vicarious liability based on *respondeat superior* cannot lie for a Section 1983 claim. *See Lewis v. Clemons*, Civil No. 11-579-GPM, 2013 WL 1287399, at *2 (S.D. Ill. Mar. 27, 2013) (citing *Iskander v. Village of Forest Park*, 690 F.3d 126, 128 (7th Cir. 1982)). The Court recognizes that, in *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014), the Seventh Circuit Court of Appeals discussed the possibility of extending vicarious liability to private corporations in Section 1983 cases. But it ultimately ruled otherwise, and the Seventh Circuit Court of Appeals declined to hear the case *en banc*. *Id.* at 795-96 ("For now, this circuit's case law still extends *Monell* from municipalities to private corporations."); *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513 (7th Cir. 2019) ("the Seventh Circuit declined to hear *Shields en banc*, and since then we have chosen to leave *Iskander* undisturbed."). Thus, any claim within Count 10 seeking to hold the Illinois Central Federation of Teachers and Support Staff Local Union 4673 based on a theory of *respondeat superior* liability is dismissed.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss filed by Defendants Illinois Central School District 104 Board of Education and Sarah Svoboda (Docs. 72 and 73) is **DENIED**.

The Motion to Dismiss filed by Derek Morgan (Doc. 74) is **GRANTED in part and DENIED in part**. It is granted as to any claim within Count 10 seeking to hold the Illinois Central Federation of Teachers and Support Staff Local Union 4673 liable under a theory

of *respondeat superior*, but denied on all other grounds.

     **IT IS SO ORDERED.**

     **DATED:   September 30, 2019**

                           **s/ Nancy J. Rosenstengel**        
                           **NANCY J. ROSENSTENGEL**
                           **Chief U.S. District Judge**